**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2058-24

FREDERICK HESSELBIRG,

     Plaintiff-Appellant,

v.

BOROUGH OF ROSELAND,
ROSELAND POLICE
DEPARTMENT, SERGEANT
EDWARD FERNANDEZ, and
OFFICER MICHAEL
BALLENTONI,

     Defendants-Respondents.

_____

Submitted November 13, 2025 – Decided January 20, 2026

Before Judges BerdoteByrne and Jablonski.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-6848-21.

Piro, Zinna, Cifelli, Paris & Genitempo, LLC, attorneys for appellant (Alan Genitempo, on the brief).

Trinity & Farsiou, LLC, attorneys for respondents Borough of Roseland and Roseland Police Department (Tracy B. Bussel, on the brief).

Weber Gallagher Simpson Stapleton Fires & Newby, LLP, attorneys for respondents Sergeant Edward Fernandez and Officer Michael Ballentoni (Rafael A. Soto, on the brief).

PER CURIAM

Plaintiff Frederick Hesselbirg appeals from a final order granting summary judgment in favor of the Borough of Roseland, the Borough of Roseland Police Department (collectively, the Borough), Sergeant Edward Fernandez, and Officer Michael Ballentoni. Plaintiff claims defendants created a hostile work environment in violation of the New Jersey Law Against Discrimination (LAD) N.J.S.A. 10:5-1 to -50, but the trial court found plaintiff failed to establish severe or pervasive conduct sufficient for a hostile work environment claim.

We affirm. The facts, when viewed in the light most favorable to plaintiff, do not reflect conduct that was severe nor pervasive. Further, there is no evidence defendants engaged in any hostile conduct based on plaintiff's gender.

I.

Plaintiff has been employed as a police officer with the Borough of Roseland since 2005 and continues in that position. According to plaintiff's complaint, on or around September 2019, he learned of a disturbing audio recording between his then supervisor, Defendant Fernandez, as well as

2

Defendant Bellantoni, and an unidentified person. Plaintiff was informed of the recording by Officer Gibbons, who had in turn been informed by Captain Mildon. Captain Mildon discovered the recording during a monthly review of all recordings captured on the department's motor vehicles. Within a week of learning of the recording, plaintiff spoke with Officer in Charge (OIC) Costello, who, according to plaintiff, confirmed the conversation had occurred and characterized the content as "not good."

When reviewing the tapes, Captain Mildon heard what he believed was officer misconduct. The record shows that the following statements regarding plaintiff were captured by the recording:

> -SF2: discussing disciplining #63, with #75, the FOP President.
>
> -SF: "When he becomes insubordinate, I'm going to f[***]ing send him home, Freddie you['re] done pack your bag go home . . . pending suspension."

Plaintiff did not listen to the recording until he received it during the discovery phase of this lawsuit. Instead, plaintiff "inferred from what he was told" by Gibbons that Fernandez and Bellantoni intended to "set him up," or the minute he did something improper they would "send him home." Plaintiff alleges Fernandez and Bellantoni were plotting to give plaintiff a negative review with the intention of charging him with insubordination or conduct

3

A-2058-24

unbecoming of an officer, ultimately hoping to have him terminated or passed over for promotion in favor of Bellantoni.

After learning about the recording, plaintiff alleges Bellantoni continued to interact with him, behaving "overly polite, making [him] feel uncomfortable in general." Plaintiff testified to making two complaints about his discomfort in working with Fernandez and Bellantoni, one written on November 25, 2019, to either Sergeant John Allison or Lieutenant Maglio,[1] and one oral complaint made on January 29, 2020, to Captain Mildon and Lieutenant Maglio. Plaintiff testified he felt defendants were insincere in their interactions with him, he was uncomfortable working with them and that he was humiliated when he was forced to salute Fernandez after learning of the recording. Plaintiff also stated Bellantoni "invaded [his] personal space and rubbed his neck."

Plaintiff testified about an incident in September 2021 where he, as shift supervisor, declined to communicate shift-change information to Bellantoni, who was the incoming shift commander, about an event involving a pole fire. Plaintiff received a written reprimand for his actions.

---

[1] Plaintiff could not recall the person to whom he submitted his written complaint.

A-2058-24

Sergeant Allison, who was responsible for scheduling, was told to try to keep plaintiff off the same tour as Fernandez and Bellantoni. He testified he tried to comply with this request. Plaintiff acknowledged there were only two platoons with four squads working shifts from 7 a.m. to 7 p.m. and 7 p.m. to 7 a.m., but felt he should have been allowed to work a 6 a.m. to 6 p.m. shift to avoid Bellantoni and Fernandez. Plaintiff stated during his deposition that no such shift existed, and it would have to be created specifically for him. Former Police Director John Matheis testified plaintiff's proposed schedule was not possible:

> Q. Is it possible for Sergeant Hesselbirg to work a shift from 6 to 6 as opposed to from 7 to 7?
>
> A. No.
>
> Q. Can you tell me why not?
>
> A. The schedule is set up 7A to 7P, 7P to 7A. There's not enough officers [i]n the department to have that type of capability where officers wouldn't be working together. Not together, but passing each other. It's . . . just too small of a department. . . . I have a small amount of officers to work with. We're undermanned . . . .

At his deposition, plaintiff did not claim he was discriminated against because of his religion, age, nor sexual orientation. Instead, he claimed he was treated adversely because of his gender, alleging a female secretary was

5

accommodated and allowed to change shifts to avoid a coworker who used foul language, but he was denied the opportunity to change shifts to avoid Fernandez and Bellantoni. Notably, plaintiff testified he was not treated differently than other males in the department.

On September 9, 2021, plaintiff sued defendants, alleging violations of the New Jersey Civil Rights Act (NJCRA), N.J.S.A. 10:6-1 to -2, negligent infliction of emotional distress, intentional infliction of emotional distress, defamation and slander, and hostile work environment in violation of the LAD.

After discovery, defendant officers and the Borough moved for summary judgment. Plaintiff opposed the motions with respect to count five of his complaint, hostile work environment. He abandoned his other claims. The trial court granted the motions, reasoning as follows:

> [A]s a matter of law looking at the matters that are complained of . . . and the matters detailed in the evidentiary materials there [is] not a severe or pervasive hostile environment. There . . . are complaints about civility . . . there may have been persons that were uncomfortable to work with . . . . [These are circumstances] that as a matter of law . . . fall within the I'll call them general civility category, not matters that a reasonable person would believe are so severe and pervasive that the conditions of employment have become a hostile work environment. So the court [agrees] with the moving defendants that there are no

6

genuine issues of material fact and that the defendants are entitled to judgment as a matter of law.

This appeal followed.

II.

We review a trial court's grant of a motion for summary judgment de novo and apply "the same standard used by the trial court." Arias v. Cnty. of Bergen, 479 N.J. Super. 268, 275 (App. Div. 2024) (quoting Samolyk v. Berthe, 251 N.J. 73, 78 (2022)). Pursuant to Rule 4:46-2(c), a motion for summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." We therefore consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." In re Est. of Jones, 259 N.J. 584, 594 (2025) (quoting Padilla v. Young Il An, 257 N.J. 540, 547 (2024)).

The LAD's remedial purpose "is 'nothing less than the eradication of the cancer of discrimination.'" C.V. ex rel. C.V. v. Waterford Twp. Bd. of Educ., 255 N.J. 289, 306-07 (2023) (quoting Lehmann v. Toys 'R' Us, Inc., 132 N.J.

7

587, 600 (1993)) (internal quotation marks omitted).  It prohibits unlawful employment practices and discrimination "based on race, religion, sex, or other protected status[] that creates a hostile work environment."  Cutler v. Dorn, 196 N.J. 419, 430 (2008); see also N.J.S.A. 10:5-12(a).

To establish a prima facie case of hostile work environment pursuant to the LAD, a plaintiff must demonstrate the complained-of conduct:  "(1) would not have occurred but for the employee's gender; and it was (2) severe or pervasive enough to make a (3) reasonable [person] believe that (4) the conditions of employment [were] altered and the working environment [was] hostile or abusive."  Rios v. Meda Pharm., Inc., 247 N.J. 1, 10 (2021) (quoting Lehmann, 132 N.J. at 603-04).

The "defining element" of a hostile work environment claim is that the protected characteristic was the cause of the harassment.  See Herman v. Coastal Corp., 348 N.J. Super. 1, 20 (App. Div. 2002).  To that end, "[c]ommon sense dictates that there is no LAD violation if the same conduct would have occurred regardless of the plaintiff's [protected status]."  Lehmann, 132 N.J. at 604.

We apply "an objective standard to evaluate a hostile work environment claim."  Rios, 247 N.J. at 12 (citing Cutler, 196 N.J. at 431).  "The standard focuses on the . . . conduct itself and 'not its effect on the plaintiff or on the work

environment.'" Ibid. (quoting Lehmann, 132 N.J. at 606).  Thus, "neither 'a plaintiff's subjective response' to the harassment nor a defendant's subjective intent when perpetrating the harassment is controlling of whether an actionable hostile work environment claim exists."  Cutler, 196 N.J. at 431 (citations omitted) (quoting Lehmann, 132 N.J. at 613).

Any hostile work environment claim "must be evaluated in light of 'all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  Rios, 247 N.J. at 11 (quoting Cutler, 196 N.J. at 432).  To determine whether conduct is sufficiently severe or pervasive, "courts must consider the cumulative effect of the various incidents, bearing in mind that each successive episode has its predecessors, that the impact of the separate incidents may accumulate, and that the work environment created may exceed the sum of the individual episodes."  Ibid. (quoting Lehmann, 132 N.J. at 607) (internal quotation marks omitted).

Here, the trial judge correctly dismissed the hostile work environment claim because plaintiff did not show defendants' conduct would not have occurred but for his gender.  The evidence did not demonstrate the "defining

element" of a hostile work environment claim, namely, that plaintiff's protected characteristic, his gender, was the cause of the harassment. A common-sense view of the evidence shows defendants would have acted in the same manner regardless of plaintiff's gender. The subjective effects of defendants' conversation on plaintiff did not establish a hostile work environment and were not a factor for consideration by the trial judge.

The LAD is not intended to be a general workplace civility code. See Heitzman v. Monmouth Cnty., 321 N.J. Super. 133, 147 (App. Div. 1999) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)). Discourtesy or rudeness should not be confused with gender discrimination. Ibid. (quoting Faragher, 524 U.S. at 787); see also Shepherd v. Hunterdon Developmental Ctr., 174 N.J. 1, 25 (2002) (holding "[a] supervisor's coldness, lack of civility, or failure to provide employees with Christmas gifts or party invitations, although inhospitable and boorish, cannot qualify as 'severe or pervasive' conduct under the LAD").

We easily conclude plaintiff failed to show a genuine issue as to any material fact challenged. The trial court properly entered summary judgment on plaintiff's hostile work environment claim as a matter of law. Rule 4:46-2(c).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

10

A-2058-24